1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KENNETH R. MERRITT,<br><br>            Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>            Defendant. | CASE NO.   C04-5162FDB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for July 15, 2005 |

Plaintiff, Kenneth R. Merritt, has brought this matter for judicial review of the denial of his application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Franklin D. Burgess' review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is fifty years old.[1] Tr. 38. He has a high school education and past work experience as a trucker, park maintenance worker and mechanic. Tr. 19, 203, 208, 215.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

On July 14, 1999, plaintiff filed an application for disability insurance benefits, alleging disability as of December 28, 1998, due to chronic neck pain, low back pain, left eye blindness, and memory loss. Tr. 19, 73, 202. His application was denied initially and on reconsideration. Tr. 38, 40, 42-45, 54-56. Plaintiff requested a hearing, which was held on March 26, 2001, before an administrative law judge ("ALJ"). Tr. 616. At the hearing, plaintiff, represented by counsel, appeared and testified. Tr. 616-43.

On June 4, 2001, the ALJ issued a decision finding plaintiff not disabled. Tr. 35-36. Specifically, the ALJ found in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of a blind left eye, lumbar spondylosis, s/p cervical strain, degenerative joint disease, recent L5-S1 central herniated nucleus pulposis abutting the S1 nerve roots bilaterally, and recent L5-S1 findings consistent with annular fissure;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform light work, which precluded him from performing his past relevant work; and

(5) at step five, because plaintiff could perform the full range of light work, Medical Vocational Rule 202.20 directed a finding of not disabled.

Tr. 20, 35-36. Plaintiff's request for review was denied by the Appeals Council on February 6, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 7-9; 20 C.F.R. §§ 404.981.

On March 22, 2004, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1). Specifically, plaintiff argues that decision should be reversed and remanded for an award of disability insurance benefits for the following reasons:

(a) the ALJ improperly evaluated the medical evidence in the record regarding plaintiff's physical impairments;

(b) the ALJ erred in finding plaintiff's mental impairments not severe;

(c) the ALJ erred in assessing plaintiff's credibility;

(d) the ALJ failed to properly consider the statements of lay witnesses;

(e) the ALJ failed to make a proper residual functional capacity assessment; and

(f) the ALJ erred in finding plaintiff disabled at step five of the disability evaluation process.

For the reasons set forth below, the undersigned recommends the ALJ's decision be reversed and remanded

REPORT AND RECOMMENDATION
Page - 2

to the Commissioner for further administrative proceedings.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ Did Not Properly Evaluate the Medical Evidence in the Record Regarding Plaintiff's Physical Impairments

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, therefore, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a

treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Magallanes, 881 F.2d at 75. An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A nonexamining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

### A.  Dr. Carl

Plaintiff argues the ALJ erred in rejecting the opinion of one of his treating physicians, Dr. Jennifer W. Carl, regarding his ability to perform work. Dr. Carl, plaintiff asserts, opined in March 2001, that he could not perform light work for at least twelve continuous months following a worsening of his lumbar spine condition earlier that year, which occurred pursuant to an attempt to return to work as a waste water treatment plant operator. Because this opinion was uncontradicted, plaintiff argues, the ALJ should have either adopted that opinion or provided specific and legitimate reasons for rejecting it.

In late February 2001, Dr. Carl diagnosed plaintiff with "aggravated lumbar strain and underlying spondylosis." Tr. 594. She noted he had experienced a "marked increase" in back pain symptoms "with a job which requires him to be on his feet about 80% of the time." Id. It was "clear" to Dr. Carl that he could not continue with that position. Id. However, she believed that "with relative rest and use of medication," he would "return to his previous baseline," when "he had pain but it was generally controlled." Id. Thus, Dr. Carl took him "off work for an indefinite period of time." Id. She did not think it likely plaintiff would return to his previous position, and felt sedentary work might "need to be considered." Tr. 594-95.

1    In early April 2001, Dr. Carl indicated plaintiff's "significant flare of symptoms" may have been due
2 to a "relatively recent disc annular injury," as evidenced by MRI findings obtained in late March 2001. Tr.
3 606, 612-13. Nevertheless, she felt he was "improving," with "a stable neurologic examination," such that
4 she thought "no further specific testing" was needed. Id. Because plaintiff remained "limited by pain,"
5 however, Dr. Carl stated he would be "unable to return to work." Id. In late April 2001, Dr. Carl again felt
6 plaintiff would be "unable to return" to his previous position, believing he would be medically unstable for
7 three more months. Id.

8    Thus, while Dr. Carl did not state specifically that plaintiff would be unable to perform light work
9 for at least twelve continuous months, she did indicate he could not return to his previous job as a waste
10 water treatment plant operator, which appears to have been performed at the light exertional level. Tr. 563,
11 594-95, 600-01. To the extent Dr. Carl stated he might be able to return to work, she indicated it would be
12 in a more sedentary capacity. Tr. 595. It is clear from the language of the ALJ's decision, furthermore, that
13 he did not properly evaluate the most recent clinical findings regarding plaintiff's lumbar spine problems (as
14 evidenced by the March 2001 MRI findings) or Dr. Carl's opinions with respect thereto.

15    With respect to those opinions and that evidence, the ALJ found as follows:

> To the extent that observations and statements of Dr. Carl and Chiropractor [Geoffrey S.] Masci[, D.C.] can be interpreted as opinions that the claimant was disabled at any time pertinent to this inquiry, I reject those opinions as unsupported. Claimant has what has been objectively identified as a category II impairment, which as noted above is indicative of a "(m)ild low back impairment, with mild intermittent objective clinical findings of such impairment but no significant x-ray findings and no significant objective motor loss. Subjective complaints and/or sensory losses may be present." Such an impairment does not support a conclusion of disability, and the objective findings of record, including those of Dr. Carl and Chiropractor Macsi, do not, <u>prior to the recent MRI findings</u>, support any greater impairment.

Tr. 33 (emphasis added). Thus, it appears the ALJ did not consider how plaintiff's most recent work-related injury affected his ability to work. Accordingly, on remand the ALJ shall reconsider the March 2001 MRI findings and the opinions issued by Dr. Carl subsequent to plaintiff's most recent work-related injury, to determine what effect that injury has had on his ability to work.

B.    <u>Drs. Fey and Williamson-Kirkland</u>

Plaintiff argues the ALJ should have adopted the opinion of Dr. Thomas E. Williamson-Kirkland and Steven G. Fey, Ph.D., that he was unable to perform work as of December 1999, and that he remained incapable of performing work during his subsequent treatment at the pain management clinic where they

REPORT AND RECOMMENDATION
Page - 5

1  treated him. Nothing in the record, however, indicates that either physician issued such an opinion. In late
2  December 1999, Drs. Fey and Williamson-Kirkland conducted a joint initial pain management program
3  evaluation of plaintiff, finding in relevant part as follows:

> Vocationally this patient needs to do physical work because his brain is not really functioning as well as it might after his brain injury. <u>Whether he can get back to a physical level to do his old job is unlikely</u> with his neck and aging lumbar spine disc. <u>However, he should be able to work himself up to medium duty work and perhaps heavy equipment operation of some sort</u> if he can back into extension and he is not unstable.

Tr. 388 (emphasis added). Thus, clearly neither physician found plaintiff unable to do any work. Rather, at the time, they deemed him capable of performing even medium level work.

Plaintiff argues, rather creatively, that by the time Drs. Fey and Williamson-Kirkland conducted the initial pain management program evaluation in December 1999, he had been out of work since December 1998, for a total of twelve continuous months. It was not until early April 2000, plaintiff asserts, that they deemed him medically stable in a pain management program discharge summary report, and therefore able to perform light work. As such, plaintiff argues the ALJ should have stated why he did not agree with their opinion that he was unable to work from December 1998 to April 2000.

Again, however, nothing in the record supports this reading of their opinion. It is true that in their pain management program discharge summary report, Drs. Fey and Williamson-Kirkland found plaintiff to be medically stable and "work ready at a light to possibly light/medium level." Tr. 508. Nowhere in any of the reports they issued though, either before or after the April 2000 discharge summary report, did either physician opine, or even suggest, he was unable to work or work at less than a light to medium exertional level. Indeed, both consistently felt he was capable of performing at a much greater level than he showed. See Tr. 423, 508-510, 512-15, 517, 528, 530, 532, 534-37, 546-48, 559.

Prior to his most recent on the job injury, furthermore, and even as late as early January 2001, Dr. Carl believed plaintiff to be improving and ultimately capable of performing at least light work. See Tr. 284, 392, 394, 397, 400, 402-03, 405, 410, 561, 563-65, 592-93. Indeed, she okayed him to begin, and then continue with, his on-the job training for the waste water treatment plant operator position until he was injured on the job. Tr. 563, 592-93. Thus, all of plaintiff's treating physicians felt he was capable of

REPORT AND RECOMMENDATION
Page - 6

performing at least at a light exertional level during this time period.[2]

### C. The ALJ Did Not Fail to Fully Develop the Record

An ALJ's duty to further develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). Plaintiff argues the ALJ should have contacted Dr. Carl regarding the course of treatment needed for the "new pathology" shown by the late March 2001 MRI findings, to determine his residual functional capacity and to see if his condition would last for twelve continuous months. Although, as discussed above, the ALJ erred in evaluating the reports Dr. Carl issued subsequent to plaintiff's most recent work-related injury, it is not at all clear that contacting her was necessary to determine his residual functional capacity. Further, because Dr. Carl felt plaintiff would remain medically unstable for only three more months in late April 2001, it is clear she did not believe he was totally disabled. Nevertheless, should the ALJ find on remand that further contact with Dr. Carl is necessary, he shall do so.

## II. The ALJ Improperly Found Plaintiff's Mental Impairments Not Severe

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. § 404.1520. At step two of this process, the ALJ must determine if an impairment is "severe". Id. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521(a); Social Security Ruling ("SSR") 96-3p. Basic work activities consist of those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 140.1521(b); SSR 85- 28; SSR 96-3p.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving his "impairments or their symptoms affect his ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

Plaintiff argues the ALJ erred in finding his mental impairments not severe. Specifically, he asserts the record shows he had anxiety and depression, as well as cognitive deficits, which impacted his ability to

---

[2]In addition, while it may be true that Dr. Carl's opinions are entitled to greater weight than the opinions of Drs. Fey and Williamson-Kirkland, because she treated plaintiff for a longer period of time, that issue is irrelevant for the period prior to his most recent work-related injury, during which they all agreed he could perform at least light work. See 20 C.F.R. § 404.1527.

work. With respect to plaintiff's mental impairments, the ALJ stated as follows:

> His mental impairments [sic] organic mental disorder and affective disorder have not been demonstrated to be severe.

Tr. 20. The undersigned agrees that this general statement is hardly a sufficient basis upon which to find plaintiff's mental impairments not severe. See Smolen, 80 F.3d at 1290 (step two severity determination is merely *de minimis* screening device to dispose of groundless claims).

Because the medical evidence in the record is ambiguous regarding plaintiff's mental impairments, however, the undersigned is unable to determine whether or not those impairments are in fact severe. For example, although the record indicates plaintiff has suffered from bouts of depression and anxiety in the past, he appears to have been able to overcome his depression and anxiety-related symptoms. Tr. 384, 389, 405, 407, 417, 419-20, 422, 434, 436, 438, 494, 528, 536, 540, 543, 545, 549, 556, 563, 575, 580-82, 584, 588, 606. As such, it appears that his anxiety and depression are not severe.

On the other hand, while plaintiff has been noted to have certain other cognitive deficits, given the conflicting medical evidence in the record, it is not clear to what extent those deficits affect his ability to perform basic work activities. Tr. 384, 388-89, 417, 422, 425, 430-34, 436-37, 442, 494, 508-10, 512, 516, 534, 536, 540-43, 556, 563, 575, 580, 585, 587, 606. For example, although plaintiff has reported having significant memory and thinking problems, he also has reported being helped by medication, and, at times, has shown few difficulties in these areas. Tr. 404, 417, 509, 516, 534, 563. In addition, his physicians have given conflicting opinions regarding whether or not his cognitive difficulties significantly affect his ability to work. Tr. 388, 403, 405, 420, 433, 510, 528, 561, 565, 605.

Accordingly, on remand, the ALJ shall further consider whether plaintiff's cognitive deficits have more than a minimal effect on his ability to perform basic work activities.

III.   The ALJ Properly Assessed Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th

Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

The ALJ discounted plaintiff's credibility in part because he had engaged in a number of physical activities, including hunting, fishing, yard work, riding his motorcycle, and building a garage. Tr. 30, 32. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id.

In early February 1999, plaintiff was noted to be engaged in the following social/recreational activities: hunting, fishing, riding, walking, and working on cars. Tr. 571, 575. In mid-January 2000, Dr. Carl stated that plaintiff was able to "walk for up to two hours." Tr. 392. In late March 2000, plaintiff told Dr. Williamson-Kirkland about his truck, elk hunting and driving his motorcycle. Tr. 548.

In early April 2000, plaintiff told Dr. Williamson-Kirkland "stories of fishing and digging up weeds in his yard." Tr. 537. Dr. Williamson-Kirkland therefore felt he "evidently" had been "fairly busy over the weekend, doing a fair amount of work digging up thistles." Id. He further noted plaintiff's pants and shoes certainly looked "dirty enough" to indicate he had been "quite busy." Id. Also in early April 2000, plaintiff

REPORT AND RECOMMENDATION
Page - 9

1   told Dr. Fey he had been "busy at home doing quite a few chores." Tr. 536.

2   When asked by Dr. Williamson-Kirkland in mid-April 2000, what he had done at home, plaintiff
3   stated that he had "put up a temporary garage," and then, with some of his children, had moved "plywood
4   and wood inside" the garage and "filled it up with things that were in his dining room." Tr. 534. Dr.
5   Williamson-Kirkland suspected plaintiff was going to have two acres logged and to work on building his
6   garage that week. Id. In late April 2000, Dr. Williamson-Kirkland again described him as looking "like a
7   man who is quite busy and active and probably is very vigorous around his house." Tr. 530.

8   Accordingly, the ALJ did not err in discounting plaintiff's credibility for this reason. In addition, the
9   ALJ discredited plaintiff's testimony in part because he denied engaging in such activities, even though
10  those activities were documented in the record. Tr. 30, 32. This too was a proper basis for discounting
11  plaintiff's credibility. Smolen, 80 F.3d at 1284 (ALJ may consider prior inconsistent statements and other
12  testimony that appears less than candid). Plaintiff argues the ALJ did not provide specific reasons for why
13  he did not credit his denials. However, as discussed above, the fact that he engaged in these activities was
14  noted in the record does provide a sufficient basis for discrediting those denials.

15  The ALJ also discredited plaintiff's credibility in part due to issues of motivation and secondary
16  gain, finding specifically that:

> I note a significant issue of motivation in this case. Claimant noted to Dr. Carl that he
> was able to maintain 100% or more of his salary while not working . . . In addition, the
> record contains many references to the claimant's job preferences, notably the wish to
> stay with his former employer, although there is also an expressed desire to explore
> work with an associated tribal organization; he specifically disdained office type work,
> and expressed a preference for outdoor work. In addition, Dr. Williamson-Kirkland and
> Dr. Stephen G. Fey, both noted claimant appeared to self-limit out of a fear of
> compromising his vocational rehabilitation options.

Tr. 30. The ALJ may consider "[m]otivation and the issue of secondary gain" in rejecting a claimant's
symptom testimony. See Tidwell, 161 F.3d at 602; Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016,
1020 (9th Cir. 1992).

As the ALJ found, Drs. Williamson-Kirkland and Fey both noted plaintiff appeared to be purposely
self-limiting in his occupational therapy, and that he was obviously capable of performing at a much higher
level than he showed. Tr. 388-89, 509-10, 512-17, 528, 530, 532, 534-37, 545-47, 549, 556-57, 559. The
evidence in the record also reveals that plaintiff was very resistant to pursuing job opportunities other than
returning to the work he did prior to his alleged onset date of disability. Tr. 246, 249, 254, 262, 275, 511.

REPORT AND RECOMMENDATION
Page - 10

In addition, the evidence in the record does call into question plaintiff's motivation for returning to work. See Tr. 246, 249, 404, 528, 530, 532, 534, 536, 548, 559. For example, plaintiff reported to Dr. Carl that "[s]o long as he has reimbursement for time loss, he has access to other funds and estimates that he might be able to make 100% or more of his salary." Tr. 404. Dr. Fey further noted that:

> He very much wants to get some sort of training or on the job training program so that he can keep his L&I income going for another year and he thinks that he might have several employers who would take him on under these circumstances. The basic issue here is that he does not have much chance of getting any other sort of job and he fears, I think, that he will have a sudden cessation of his time loss unless he can get into some sort of vocationally supported rehab plan.

Tr. 536. According to plaintiff's vocational rehabilitation counselor, plaintiff desired to return to his prior job at his former employer "to maintain his retirement benefits," even though this limited his vocational training options. Tr. 246, 249.

Plaintiff argues such evidence constitutes mere speculation and is not credible, since he later did obtain a job as a waste water treatment plant operator on his own, he was discouraged from pursuing this job by his vocational rehabilitation counselor, and Dr. Carl and other sources in the record stated that he wanted, and was happy, to return to work. Dr. Williamson-Kirkland, Dr. Fey and plaintiff's vocational rehabilitation counselor did not state that plaintiff did not want to return to work, but rather that he wanted to delay his return to work so that he could maintain his benefits and find something that paid more in line with what he was previously making. As all three noted, however, this attitude hindered their efforts in helping him return to work earlier. Further, while plaintiff labels their observations speculative, they all worked with him over a long enough period of time to have a reliable basis upon which to judge his behavior and credibility. In any event, the ALJ is responsible for resolving questions of credibility in the evidence. See Reddick, 157 F.3d at 722; Sample, 694 F.2d at 642. To that extent, therefore, the ALJ did not err in discounting plaintiff's credibility for this reason.

Along those lines, furthermore, the ALJ also did not err in discounting plaintiff's credibility for not fully engaging in restorative therapy. Tr. 31. Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). On the other hand, if the claimant provides evidence of a good reason for not taking medication, his symptom testimony cannot be rejected because he failed to do so. Smolen, 80 F.3d at 1284. As discussed above, the evidence

in the record shows that plaintiff engaged in self-limiting behavior while in occupational therapy, which the ALJ properly noted casts doubt on his sincerity.

The ALJ also discounted plaintiff's credibility in part because he indicated good depression control to Dr. Vance Sherman. Tr. 32, 580. As discussed above, the medical evidence in the record indicates that plaintiff had largely overcome his depression and anxiety-related symptoms. Accordingly, the ALJ did not err in discounting plaintiff's credibility on this basis.

Finally, the ALJ discounted plaintiff's credibility due to a lack of objective findings to support his allegations of disabling pain. A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). As discussed above, however, the ALJ failed to properly evaluate the medical evidence in the record concerning plaintiff's physical impairments subsequent to his most recent work-related injury. Accordingly, at least with respect to the period after he sustained that injury, this reason for discounting plaintiff's credibility is not valid. Nevertheless, the mere fact that one of the ALJ's reasons is not legitimate, does not render the credibility determination invalid, as long as it is supported by the substantial evidence, as it is here. Tonapetyan, 242 F.3d at 1148.

IV.     The ALJ Improperly Evaluated the Opinions of Plaintiff's Chiropractor

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1395 (9th Cir. 1984) . In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

Plaintiff argues the ALJ ignored the lay witness evidence provided by Greg Masci, his chiropractor. A plain reading of the ALJ's decision, however, reveals that the ALJ did consider that evidence. Tr. 22, 33. Plaintiff also argues the ALJ failed to give germane reasons for rejecting Mr. Masci's opinions regarding his

functional limitations. While plaintiff does not indicate which of Mr. Masci's opinions he is referring to, as with Dr. Carl, the ALJ limited his discussion of Mr. Masci's opinions to the period prior to plaintiff's most recent work-related injury. To that extent, he erred. Accordingly, on remand the ALJ shall further consider the opinions provided by Mr. Masci subsequent to that injury.

Plaintiff further argues the ALJ erred in not considering the lay witness statement of James W. Burton, a vocational rehabilitation consultant. This statement, however, was submitted to the ALJ some three weeks after the record (which the ALJ left open for an extra thirty days to allow plaintiff to submit additional evidence) had been closed. Tr. 622; Plaintiff's Opening Brief, Exhibit A. Even though the statement itself appeared to have been made three weeks prior to the date plaintiff submitted it to the ALJ, he provides no explanation as to why he did not submit that exhibit earlier. The court, therefore, will not consider it for purposes of reviewing of the ALJ's decision.

V.      The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. at *2. Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ assessed plaintiff with the following residual functional capacity:

> I find the claimant capable of light work. While he has limitations in various postural activities to occasional, I find that these limitations would not erode the universe of light work. . . . In addition, I note that his limitation to work not requiring binocular vision has not been a significant limitation in the past, and would not impose significant

1  limitations currently. . . . At most he would need to avoid jobs involving exposure to
2  unprotected heights and dangerous machinery, although he has frequently worked
   around the latter in the past.

Tr. 33.  Plaintiff argues in his opening brief that while the ALJ relied on the opinion of Dr. Robert Hoskins, a non-examining consulting physician, he failed to consider the limitations Dr. Hoskins placed on him with respect to reaching in all directions. Tr. 33, 445, 447.  Although not so expressly stated, the court assumes plaintiff is challenging the ALJ's residual functional capacity assessment on this basis.  To that extent, the court agrees.  Because the ALJ found Dr. Hoskins' opinion was supported by the record, he should have considered the effect those reaching limitations had on plaintiff's residual functional capacity.

Plaintiff also argues in his reply brief that the ALJ erred in failing to make a function by function narrative analysis in assessing his residual functional capacity.  That argument, however, was not made in plaintiff's opening brief, and therefore the court will not consider it now.  Nevertheless, because, as discussed above, the ALJ erred in evaluating the medical and other evidence in the record concerning plaintiff's ability to work subsequent to his most recent work-related injury, on remand the ALJ also shall further consider the effect that injury had on his residual functional capacity.

VI.  <u>The ALJ Erred in Finding Plaintiff Not Disabled at Step Five of the Disability Evaluation Process</u>

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids").  <u>Tackett</u>, 180 F.3d at 1100-1101; <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2000).  The Grids may be used if they "*completely and accurately* represent a claimant's limitations." <u>Tackett</u>, 180 F.3d at 1101 (emphasis in the original).  That is, the claimant "must be able to perform the *full range* of jobs in a given category." <u>Id.</u> (emphasis in the original).  If the claimant "has significant non-exertional impairments," however, reliance on the Grids is not appropriate.  <u>Ostenbrock</u>, 240 F.3d at 1162; <u>Tackett</u>, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids).

At step five, the ALJ found that because the evidence in the record supported a finding that plaintiff was capable of performing the full range of light work, a finding of "not disabled" was required under the

Grids. Tr. 35. Plaintiff argues the ALJ erred in not considering the combined effects of his exertional and non-exertional impairments (including his chronic pain, mental impairments, and impaired vision). Thus, plaintiff asserts, the ALJ also erred in failing to call a vocational expert to testify. As discussed above, the ALJ erred in evaluating the evidence in the record concerning plaintiff's physical impairments subsequent to his most recent work-related injury, and in finding plaintiff's mental impairments not severe. Although the ALJ did consider plaintiff's impaired vision in assessing his residual functional capacity, it is not clear that he took this into account in deciding whether to apply the Grids.

Accordingly, the undersigned finds the ALJ erred in determining plaintiff was not disabled at step five of the disability evaluation process. On remand, therefore, the ALJ shall re-consider whether plaintiff is capable of performing other work existing in significant numbers in the national economy, and whether the testimony of a vocational expert is needed to do so.

VII.   This Case Should Be Remanded for Further Administrative Proceedings

The court may remand a case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Id.; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain as to whether plaintiff is capable of performing other work at step five of the disability evaluation process, this case should be remanded for further administrative proceedings.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those

REPORT AND RECOMMENDATION
Page - 15

objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **July 15, 2005**, as noted in the caption.

DATED this 21st day of June, 2005.

Karen L. Strombom
United States Magistrate Judge